# Matter of H-L-S-M-, Applicant

*Decided by Board June 18, 2026[1]*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The Immigration Judge clearly erred in finding it more likely than not the applicant will be tortured if removed to either Mexico or Guatemala based on general country conditions evidence and expert witness testimony about corruption while overlooking key facts regarding the applicant's individualized circumstances, including lack of past torture, the passage of time since the applicant received threats, and the vague and indirect nature of the threats.

(2) The applicant did not establish that a public official is likely to acquiesce to his torture by gang members where the record shows elements within the government have taken action to combat criminal organizations, even if such efforts have not been effective.

FOR THE APPLICANT: Benjamin T. Wiesinger, Esquire, Phoenix, Arizona

FOR THE DEPARTMENT OF HOMELAND SECURITY: Michael Schmitz, Counsel

BEFORE: Board Panel: HUNSUCKER and CHABAN, Appellate Immigration Judges; WHITE, Temporary Appellate Immigration Judge.

HUNSUCKER, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals the Immigration Judge's October 17, 2025, decision granting the applicant's request for deferral of removal under the regulations implementing the Convention Against Torture ("CAT")[2] to both Guatemala and Mexico.[3] The applicant, a

---

[1] Pursuant to Order No. 7024-2026, dated July 16, 2026, the Acting Attorney General designated the Board's decision in *Matter of H-L-S-M-* (BIA June 18, 2026), as precedent in all proceedings involving the same issue or issues. *See* 8 C.F.R. § 1003.1(g)(3) (2026). Editorial changes have been made consistent with the designation of the case as a precedent.

[2] The Convention Against Torture and Other Cruel Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1207.17 (2026); 8 C.F.R. § 1208.18(a) (2020).

[3] The applicant is in withholding-only proceedings due to the filing of a Notice of Referral to the Immigration Judge ("Form I-863") by DHS with the Immigration Court. *See* 8 C.F.R. §§ 1208.2(c)(2), 1208.31(e), 1241.8(e) (2026). The applicant conceded that he is

native and citizen of Guatemala, opposes the appeal. The appeal will be sustained.

The applicant's claim is based on providing testimony in the United States against members of the Latin Kings and MS-13 gangs. He claims that he became a member of the Latin Kings gang in 2007 and that he participated in and witnessed various criminal acts. In 2008, he was arrested for possession of an unauthorized firearm and was ultimately convicted. He was also indicted for conspiracy to participate in a racketeering enterprise under 18 U.S.C. § 1962(d). He provided testimony to agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives against gang members and testified at the trial of a Latin Kings member. Around this time, a member of the Latin Kings ran into his prison cell, attempted to stab the applicant, and threatened to kill him if he cooperated with law enforcement. The applicant learned that he had been placed on the Latin Kings' "kill on sight" list, which was also shared with gangs such as MS-13. The applicant said he was placed in the witness protection program in prison and upon his release from prison. He said he was kicked out of the program after calling a friend, which was against the security protocol. He believes that gang members are looking for him.

Applicants seeking CAT protection must demonstrate it is more likely than not they will be tortured by or at the instigation of or with the consent or acquiescence of (to include the concept of "willful blindness"), a public official or other person acting in an official capacity in the country of removal. 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a), 1208.18(a)(1). "The Board reviews for clear error the factual findings of the Immigration Judge as to what is likely to happen to the respondent in the future but reviews de novo whether the harm the respondent may experience rises to the legal definition of torture." *Matter of L-A-G-B-*, 29 I&N Dec. 343, 344 (BIA 2025).

We shall reverse the Immigration Judge's determination that the applicant has established a likelihood of torture in Mexico and Guatemala. For Guatemala, the Immigration Judge found "it is more likely than not that the applicant will be tortured or killed by MS-13 with the acquiescence of the Guatemalan government." For Mexico, the Immigration Judge found "it is more likely than not that the applicant will be tortured or killed by MS-13 or the Latin Kings with the acquiescence of the Mexican government." However, the analysis for both focused almost exclusively on generalized

---

ineligible for withholding of removal and did not seek that form of relief. Therefore, that issue is not before us.

country conditions evidence and testimony from an expert witness about corruption in both countries and overlooked key facts regarding the applicant's individualized circumstances. *See Park v. Garland*, 72 F.4th 965, 980 (9th Cir. 2023) ("Generalized evidence of violence and crime is insufficient to establish a likelihood of torture."); *Matter of G-C-I-*, 29 I&N Dec. 176, 184 (BIA 2025) (explaining that "[g]eneralized country evidence tells us little about the likelihood state actors will torture any particular person" (quoting *Qorane v. Barr*, 919 F.3d 904, 911 (5th Cir. 2019)).

Notably, the applicant never experienced any past torture in either Mexico or Guatemala. This lack of past torture is a significant consideration when assessing the applicant's risk of future torture. *See* 8 C.F.R. § 1208.16(c)(3)(i) (directing adjudicators to consider "[e]vidence of past torture inflicted upon the applicant"); *see also Nuru v. Gonzales*, 404 F.3d 1207, 1217–18 (9th Cir. 2005) ("Past torture is the first factor we consider in evaluating the likelihood of future torture because past conduct frequently tells us much about how an individual or a government will behave in the future.").

We acknowledge that the applicant's fear now stems from experiences that occurred in the United States, specifically having received threats from gang members because he cooperated with law enforcement. However, the Immigration Judge clearly erred by failing to adequately consider aspects of the applicant's testimony that minimize the risk of serious future harm posed by these threats. For example, the applicant testified that MS-13 gang members have not threatened him directly since he was released from prison. Instead, he claims MS-13 gang members indirectly blamed Latin Kings gang members for an indictment against them on social media and said, "we're going to get them." Such vague and indirect threats suggest a diminished likelihood that anyone will carry them out. *See Sharma v. Garland*, 9 F.4th 1052, 1062–63 (9th Cir. 2021) (explaining that the context surrounding threats is relevant and that "[t]hreats themselves are sometimes hollow" (quoting *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003))).

The Immigration Judge also failed to consider the significant passage of time since the applicant received threats. The applicant testified that he learned he was put on a "kill on sight" list in 2009. He said he was kicked out of a witness-protection program in February 2013. Despite this, the applicant testified that he has not been attacked since 2009, when the attempted stabbing and threat in prison occurred. He confirmed he has not even been physically approached by gang members after leaving the witness-protection program. This testimony demonstrates a lack of serious, recent interest in the applicant and shows that the Immigration Judge's conclusion

that gangs are more likely than not to harm the applicant is clearly erroneous. *Matter of J-C-A-G-*, 29 I&N Dec. 331, 332 (BIA 2025); *see also Matter of L-A-G-B-*, 29 I&N Dec. at 346 (finding clear error in a predictive finding where there was a "lack of evidence that anyone was or remains interested in the respondent").

In addition, the Immigration Judge clearly erred in weighing the testimony of the expert witness. *See Matter of M-A-M-Z-*, 28 I&N Dec. 173, 177 (BIA 2020) (explaining that the weight given to an expert witness is a factual question); 8 C.F.R. § 1003.1(d)(3)(i) (2026) (providing that factual findings are reviewed under the "clearly erroneous" standard). Like the Immigration Judge, we acknowledge reports of violence, crime, and corruption in both Mexico and Guatemala. However, the applicant's expert witness also testified that both the Guatemalan and Mexican Governments have taken action to combat criminal organizations within their borders. While he stated that such efforts have not been effective, the fact that elements within the governments have attempted to combat the issues, which the Immigration Judge acknowledged in a summary of the testimony but did not address in the analysis, diminishes the likelihood that any future torture that the applicant fears would occur by, or with the consent or acquiescence of, a public official or other person acting in an official capacity in either country. *See Matter of O-A-R-G-*, 29 I&N Dec. 30, 36 (BIA 2025) ("Acquiescence in the CAT context requires a greater degree of governmental complicity than is required to establish a government is unable or unwilling to protect a respondent in the asylum context.").

After failing to adequately consider this undisputed evidence, the Immigration Judge clearly erred in concluding it is likely the applicant will experience torture in either Mexico or Guatemala. *See Matter of L-A-G-B-*, 29 I&N Dec. at 344. The applicant may face a risk of harm in either country. However, given the indirect nature of many of his threats, the significant passage of time without experiencing harm or physical contact from the gangs, and the efforts both countries have taken to combat organized crime, he has not shown it is more likely than not he will be tortured by or at the instigation of or with the consent or acquiescence of (to include the concept of "willful blindness"), a public official or other person acting in an official capacity in Mexico or Guatemala. 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a), 1208.18(a)(1). Accordingly, we will sustain DHS' appeal and vacate the Immigration Judge's order granting deferral under the CAT. *See Matter of L-A-G-B-*, 29 I&N Dec. at 345–46 (reversing a CAT grant where the "Immigration Judge's predictive factual findings draw unsupported inferences from the record and are clearly erroneous" and explaining that remand for additional factfinding or analysis was not necessary).

**ORDER:** DHS' appeal is sustained.

**FURTHER ORDER:** The Immigration Judge's order dated October 17, 2025, is vacated.

**NOTICE:** If an applicant is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the applicant's departure pursuant to the order of removal, the applicant shall be subject to a civil monetary penalty of up to $998 for each day the applicant is in violation. *See* INA § 274D, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2026). Further, any applicant that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a) (2024).